United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FLEXPORT INTERNATIONAL, LLC,

Plaintiff,

v.

AM TRANS EXPEDITE, INC., et al.,

Defendants.

Case No. 25-cv-04909-CRB

**ORDER GRANTING MOTION TO DISMISS IN PART**

Plaintiff Flexport International, LLC ("Flexport") sued Am Trans Expedite, LLC ("Am Trans") and Am Trans' individual officers Jonathan Hackney, Keith Pruchnick, and Michael Wallace (collectively, "Individual Defendants"), as well as Sandhu Bro Transport Inc. for losses stemming from the theft of its cargo during transit. Compl. (dkt. 1). Am Trans and the Individual Defendants (collectively, "Defendants") moved to dismiss. Mot. (dkt. 25). The Court **GRANTS** the motion to dismiss as to Flexport's unlawful brokerage activity claim.[1] The Court first addresses the fact-intensive nature of Flexport's two other claims before discussing the unlawful brokerage activity claim.

Defendants' central argument is that Am Trans is a broker, not a motor carrier. See Mot. at 3–12. This classification, Defendants assert, is fatal to all of Plaintiffs' claims. See id. But delving into this issue would be fact-intensive. And "it is not appropriate to litigate factual disputes on a motion to dismiss." Olsen v. Hortica Ins. Co., No. 5:21-CV-03891-EJD, 2023 WL 2277007, at *2 (N.D. Cal. Feb. 27, 2023).

For starters, it is improper to incorporate the brokerage agreement by reference.

---

[1] Pursuant to Civil Local Rule 7-1(b), the Court deems this matter suitable for resolution without argument. The Court also presumes familiarity with the factual allegations and applicable law.

That agreement is at the heart of Defendants' argument that Am Trans was actually a broker because they contend it was executed after the carrier agreement, meaning it governs this dispute. See Mot. at 3–5. But the incorporation by reference doctrine is inapplicable here. It is not "the basis of [Flexport's] claim." See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018). Indeed, it is the carrier agreement that Flexport uses as the foundation of its claims. See Compl. ¶¶ 19–36. And Flexport does not "refer[] extensively to the document" throughout its complaint—citing the brokerage agreement in two paragraphs out of thirty-seven. See Khoja, 899 F.3d at 1002; Compl. ¶¶ 12, 30. That is by no means extensive. Moreover, the parties raise a factual dispute about exactly when the brokerage agreement was executed (essential to which contract at issue came first) and even whether Am Trans was in existence at one of the disputed times. Compare Mot. n. 1 (Am Trans was not formed until 2019 and that the brokerage agreement was executed in 2020, rather than 2017) with Opp'n (dkt. 34) at 7–10 (Am Trans existed as early as 2002 and the brokerage agreement was executed in 2017); see also Compl. ¶ 30 (alleging the brokerage agreement was executed in 2017). Accordingly, even if the Court incorporated the brokerage agreement, it would pose factual questions beyond the scope of the motion to dismiss stage. Because Defendants chiefly rely on their brokerage agreement argument to challenge Flexport's breach of contract claim, the Court rejects Defendants' attempt to dismiss it.

Next, relying in part on the brokerage agreement, Defendants challenge Flexport's Carmack Amendment claim. Because the Amendment explicitly excludes brokers, Defendants assert that the claim fails, as Am Trans is a broker. Mot. at 7–10. "The difference between a carrier and a broker is often blurry. The crucial distinction is whether the party legally binds itself to transport, in which case it is considered a carrier." CGU Int'l Ins., PLC v. Keystone Lines Corp., No. C-02-3751 SC, 2004 WL 1047982, at *2 (N.D. Cal. May 5, 2004); see also 49 C.F.R. § 371.2(a) (defining a motor carrier to include those who "arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to

United States District Court
Northern District of California

transport"). Consequently, if Am Trans "accepted responsibility for ensuring delivery of the goods, regardless of who transported them, then [Am Trans] qualifies as a carrier." See Keystone Lines, 2004 WL 1047982 at *2.

Here, Flexport clearly alleges that Am Trans agreed to transport goods as a motor carrier. Compl. ¶ 10. And that Am Trans, without informing Flexport, subcontracted the actual transport to other providers. Id. ¶ 14. That is sufficient to state a claim at this stage, especially because the Court cannot rely on the brokerage agreement. [2] The fact that Am Trans may possess a broker license "does not alter [this] result" and is "not determinative" at this stage, although Am Trans' "licensing may later serve as evidence of its role" as a broker. Suzuyo Am., Inc. v. Year-Round Enters., Inc., 2025 WL 2021352, at *3 (C.D. Cal. July 17, 2025) (factual question inappropriate on a motion to dismiss where licensed broker allegedly agreed to act as a motor carrier but subcontracted the actual shipping).

Defendants do succeed, however, in challenging Flexport's unlawful brokerage activity claim under 49 U.S.C. § 14916. Defendants point out how Flexport pleads itself out of a claim by vigorously alleging Am Trans was a motor carrier and then turning around to claim it acted as a broker. Reply (dkt. 35) at 7–9. While there is a dearth of authority in the Ninth Circuit, out-of-circuit authority has persuasively held that Section 14916 "does not apply to a motor carrier when it simply subcontracts the carriage of goods for which it is responsible." See, e.g., Landstar Ranger, Inc. v. JC Tanda Transp., Inc., 2025 WL 638533, at *3 (M.D. Fla. Feb. 27, 2025) (granting motion to dismiss unlawful brokerage activity claim where the defendant held itself out as a carrier for the transaction); Kondos v. Cobra Van Lines, LLC, 2024 WL 5264452, at *4 (S.D. Fla. Nov. 27, 2024) (noting that Section 14916 does not apply to motor carriers subcontracting to transport goods); Landstar Blue, LLC v. Perfect 1, LLC, 2025 WL 3496201, at *5 (M.D.

---

[2] Defendants rely on Buchanan v. Neighbors Van Lines, 2010 WL 4916644 (C.D. Cal. Nov. 29, 2010) to argue that Am Trans was a broker because Flexport does not allege it actually carried the goods. Mot. at 8. But that case is merely persuasive authority—and distinguishable. Unlike the instant case, the Buchanan plaintiff actually alleged that the defendant was a broker and "failed to adequately allege an agency relationship that would possibly expose [the defendant] to liability as a principal." Buchanan, 2010 WL 4916644 at *6.

United States District Court
Northern District of California

Fla. Dec. 5, 2025) (holding that a defendant "must have provided brokerage services, and it must have done so as a broker" (emphasis in original)).

That reasoning makes good sense. Section 14916 only proscribes unregulated conduct where a person "provide[s] interstate brokerage services as a broker." 49 U.S.C. § 14916(a). And the definition of "broker" explicitly excludes motor carriers or their agents. 49 U.S.C. § 13102(2). Here, Flexport insists throughout the complaint that Am Trans was a motor carrier, not a broker. See generally Compl. Even where it describes its cause of action for unlawful brokerage activities, Flexport alleges that Am Trans "held itself out as a motor carrier, not a broker." Id. ¶ 34. Moreover, the allegation that Am Trans secretly subcontracted the transport of Flexport's goods further undercuts its position that Am Trans was providing brokerage services. See id. ¶ 14. Accordingly, the unlawful brokerage activity claim against Am Trans and the Individual Defendants is dismissed.[3]

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss as to the unlawful brokerage claim.

**IT IS SO ORDERED.**

Dated: March 6, 2026

CHARLES R. BREYER
United States District Judge

---

[3] Flexport only makes two points in opposing Defendants' argument. First, it cites FedEx Trade Networks Transp. & Brokerage, Inc. v. Airboss Def. Grp., LLC, 2024 WL 1485441 (D. Md. Apr. 4, 2024), for the proposition that motor carriers violate Section 14916 when they hold themselves out as carriers but broker transport. Opp'n at 12. But that case was concerned with what counts as an injury under the statute, not the instant issue, and it was alleged that the defendants actually provided brokerage services without licenses. See Airboss, 2024 WL 1485441 at *12. Flexport also argues that "it is undisputed" that Am Trans lost its license as a motor carrier, based on a declaration provided by Defendants. Opp'n at 13. While that may or may not be true, it is not what Flexport pleaded, nor is it relevant to whether Am Trans acted as a broker. See Compl. ¶ 35 (alleging Am Trans was a licensed motor carrier).